Lucille R. KAUFFMAN,
Plaintiff–Appellant,

v.

ALLIED SIGNAL, INC., AUTOLITE
DIVISION, Defendant–Appellee.

No. 91–3511.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 14, 1991.

Decided July 22, 1992.

R. Kevin Greenfield (argued and briefed), DeNune & Killam, Sylvania, Ohio, for plaintiff-appellant.

Joseph P. Dawson (briefed), Cary Rodman Cooper (argued and briefed), Cooper, Straub, Walinski & Cramer, Toledo, Ohio, E. Sharon Clark, Southfield, Mich., for defendant-appellee.

Before: BOGGS and NORRIS, Circuit Judges, and BERTELSMAN, Chief District Judge.*

BOGGS, Circuit Judge.

This is a sexual harassment case involving a supervisor in which a female employee seeks damages under Title VII, 42 U.S.C. §§ 2000e et seq., against her employer under a "hostile environment theory" and a "quid pro quo theory." She also brought a state law claim under Ohio law for intentional infliction of serious emotional distress. The district court granted summary judgment for the employer. We affirm in part and reverse in part.

## I

Plaintiff Lucille R. Kauffman has been employed as a machine operator for the past fourteen years by defendant Allied Signal, Inc., Autolite Division, at its Fostoria, Ohio plant. Donald R. Butts had been employed by Allied for at least twenty years as a production supervisor until he retired in 1986. In 1987, Butts came back to work for Allied as a temporary full-time production supervisor pursuant to an agreement with the Rumpf Corporation, a temporary employment service.

Butts's duties as a production supervisor included assigning jobs, delegating work, analyzing problems, supervising the work force, transferring product from process to process, and reporting attendance. Plaintiff contends that Butts could discipline employees, which included firing and hiring in conjunction with his immediate supervisor, the Employee Relations Department ("ERD"), and the Union. Allied maintains that Butts had no individual power to fire or hire employees, as all such decisions had to go through the ERD. Only the ERD is authorized to hire and fire, and Allied argues that as a supervisor, Butts did not have the power to hire, fire, promote, or discipline employees on his own.

In early 1988, Kauffman took medical leave to have breast enlargement surgery in order to enhance her looks and self-esteem. Kauffman considered this a very private matter and told only a few close friends, including co-workers, about her surgery, in confidence. Kauffman did not tell Butts about her surgery. However, when Kauffman returned to work on April 11, 1988, Butts came up behind her machine, touched her left breast, and stated to Kauffman, "You didn't tell me you were going on medical leave. Why didn't you tell me you were getting new tits? When do I get to see them?" Butts also tried to look down Kauffman's shirt, while Kauffman immediately pushed him away and said "That's enough Don."

The next day, April 12, 1988, Butts took Kauffman off her regular machine, No. 110, and assigned her to machine No. 108, a manual press that was disliked within the department because it created extra work and was difficult to operate. A co-worker, Joyce Cooper, testified on deposition that working with No. 108 was "torture," as it required more manual labor than any other machine and the operator constantly had to baby-sit it. When Cooper asked Butts why he had put Kauffman on machine No. 108 and if there was something wrong with Kauffman's regular machine, Butts responded that "No, there's nothing wrong with her machine, I put her on 108 for punishment because she wouldn't show me her tits."

On April 13, 1988, while Kauffman was again working at her regular machine, No. 110, Butts threw a spark plug insulator at her and hit her on the right hip. Butts also told employee William Barfield, in front of

* The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

a co-worker, John McMeen, "If you get to see Lou's tits before I do I'll be pissed." That evening, Butts instructed another co-worker, R.T. Smith, a millwright, to ask Kauffman, "to show you her tits." Smith did this, but apologized after Kauffman became hysterical and started crying. During this three-day period, Kauffman alleges that she was also approached by at least twenty other co-workers who made comments about her surgery.

On April 13, 1988, Kauffman went to her union representative, who brought her complaint to the attention of Sam Harmon, Director of Employee Relations (DER). Butts was confronted with these allegations and was terminated immediately, on April 14, 1988. Allied has had a written policy against sexual harassment since 1981. It urges employees to present complaints of sexual harassment to the management through the DER. There is also a grievance procedure available through the collective bargaining agreement. Allied testified that the company's policy was posted throughout the plant and that it was also the subject of "special" meetings with supervisors before 1986 and was discussed thereafter with supervisors on many occasions. However, neither plaintiff nor co-worker Barfield had ever seen this policy displayed on any bulletin boards or message centers within the plant. In fact, neither employee knew that Allied had a sexual harassment policy.

Taking the record in the light most favorable to the plaintiff, the district court stated that at the time of the harassment, none of Allied's top-level managers were ever aware of any specific procedure to handle such complaints and that there had not been any meetings in the last five years with either supervisory personnel or salaried employees on the subject. Until Kauffman complained to her union representative, Allied had received only one other complaint of sexual harassment by a supervisor.

As a result of these harassing incidents, Kauffman was forced to take a medical leave of absence, and remained away from work until July 18, 1988. Kauffman claims that when she returned to work she met increased pressure and hostility, and that she developed fear as a result of her notoriety at the plant. Kauffman also testified that when she returned to work, she was placed on three different shifts and given several different job assignments that differed from those she had received before the harassment.

Kauffman was forced to take a second medical leave of absence in October 1988. During this leave, she suffered a nervous breakdown. Her psychiatrist testified that as a result of the sexual harassment in April 1988, Kauffman suffers a post-traumatic stress disorder. Kauffman is presently unable to return to work, based on her psychiatrist's recommendation. Kauffman also testified that she fears returning to work due to threats which she has received or been made aware of through various employees and agents working at Allied.[1]

Kauffman originally filed a claim with the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission. After receiving a right-to-sue letter from the EEOC, she filed this lawsuit against Allied. The district court granted summary judgment for Allied and plaintiff appeals.

## II

The question before us is whether a genuine issue of material fact exists as to whether Allied should be held liable for sexual harassment by one of its supervisors. The district court, in granting Allied summary judgment, examined Allied's liability based upon the doctrine of respondeat superior. The court found that Allied was not liable under this doctrine because Allied had no knowledge of Butts's actions and had no reason to know of these actions because there had been no prior complaints

---

1. However, Allied points out that in 1986, some two years before the sexual harassment incident, Kauffman was diagnosed as having a mental disorder that results in emotional mood swings and heightened emotional sensitivity.

against Butts; that Butts's harassment did not benefit Allied; that Allied had a written policy against sexual harassment; and that Allied took immediate and effective remedial action by discharging Butts. The district court also held that because Butts did not have the authority to hire, fire, promote or discipline Kauffman on his own, and because Allied's policy worked in this case, Allied was not liable as a matter of law for Butts's harassment of Kauffman.

This court reviews grants of summary judgment *de novo* and it applies the same test as used by the district court. *See EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

The moving party need not support its motion with affidavits or other similar materials *"negating"* the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (emphasis in original). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The summary judgment standard requires a determination of whether the party bearing the burden of proof has presented a jury question as to each element of its case. *Id.* at 322, 106 S.Ct. at 2551; *Taylor v. Medtronics, Inc.*, 861 F.2d 980, 987 (6th Cir. 1988). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

█ Kauffman's sexual harassment claim arises from Title VII's proscription that "it shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1). Case law recognizes two types of sexual harassment: 1) harassment that creates an offensive or hostile environment; and 2) quid quo pro harassment, in which a supervisor demands sexual favors as a condition for job benefits. *See Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 618 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Yates v. Avco Corp.*, 819 F.2d 630, 634 (6th Cir.1987).

In this case, where it is not contested that the sexual harassment occurred, the only question is whether Allied should be liable for the acts of its supervisor. Under the "hostile environment" theory, there are two types of cases, those where the harasser is a co-worker and those where the harasser is a supervisor. In 1986, the Supreme Court held that a claim of hostile environment sex discrimination was actionable under Title VII in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The court, looking to EEOC Guidelines, held that "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult" and "that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Vinson*, 477 U.S. at 65–66, 106 S.Ct. at 2405.

While the Supreme Court refused "to issue a definitive rule on employer liability" it agreed

with the EEOC that Congress wanted the courts to look to agency principles for guidance in this area. While such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define "employer" to include any "agent" of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible.

*Vinson,* 477 U.S. at 72, 106 S.Ct. at 2408. The Supreme Court therefore rejected the notion that "employers are always automatically liable for sexual harassment by their supervisors." *Ibid.* Yet, in rejecting strict liability, *Vinson* does not reject all liability against the employer. Instead, it directed courts to base liability determinations on agency principles.

In *Rabidue,* this court, applying agency principles in a co-worker discrimination case, held that a plaintiff, to prevail in a hostile environment action, must assert and prove that:

1) the employee was a member of a protected class; 2) the employee was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 3) the harassment complained of was based upon sex; 4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psycho logical [sic] well-being of the plaintiff; and 5) the existence of respondeat superior liability.

*Rabidue,* 805 F.2d at 619–20.

■ To establish respondeat superior liability, the plaintiff must prove "that the employer, through its agents or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Rabidue,* 805 F.2d at 621. However, the court makes clear that this "knew or should have

known" standard applies to only co-worker harassment cases.

The *Rabidue* court acknowledged the *Vinson* mandate that courts look to common law principles of agency for guidance in determining liability from acts arising from supervisors and explicitly "expresse[d] no view as to the scope of respondeat superior liability in the context of a charge of a sexually hostile working environment where alleged acts of harassment by a plaintiff's supervisor are at issue and not, as here, the alleged acts of a peer in the work-place." *Rabidue,* 805 F.2d at 621 n. 6.

This circuit first addressed the standard of liability for hostile environment claims of sexual harassment caused by the acts of a supervisor in *Yates v. Avco Corp.,* 819 F.2d 630 (6th Cir.1987). The court upheld liability on the basis of traditional agency principles, in accordance with *Vinson.*

The essential question in applying agency principles is whether the act complained of took place in the scope of the agent's employment. This determination requires an examination of such factors as *when* the act took place, *where* it took place, and whether it was *foreseeable.*

*Yates,* 819 F.2d at 636 (emphasis in original) (citations omitted). This "scope of employment" standard for supervisors is distinguishable from the "knew or should have known" respondeat superior standard for co-worker harassment cases.

■ The district court and parties seem to discuss Allied's liability interchangeably under respondeat superior and general agency principles. However, use of the phrase "respondeat superior" is typically associated with the co-worker "knew or should have known" standard. A different but closely related standard of general agency applies in supervisor harassment cases. We reject the appellee's argument that respondeat superior liability should apply here; this argument implies that we should apply a standard designed for co-worker cases, which makes no sense in a case involving a supervisor. It is more accurate to discuss supervisor liability un-

der the different general agency elements outlined in *Yates.*

As the appellant argues, the *Yates* standard is not the respondeat superior standard used by the court and appellee. *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554 (11th Cir.1987), makes this distinction between imposing straight common law tort liability under respondeat superior and broadening the scope of an employer's liability under agency principles under the doctrine of Title VII. *Sparks,* 830 F.2d at 1558–59. We agree with appellant that applying the broader general agency theory in supervisor liability cases fits with the purpose of Title VII, which broadly defines "employer" to include any "agent" of the employer and which is intended to effectuate the remedial and public policy goals of the Civil Rights Act of 1964. *Spencer v. General Electric Co.,* 894 F.2d 651, 657 (4th Cir.1990).

Appellant argues that applying general agency principles effectively establishes strict liability. However, we disagree and note that while the *Yates* court rejected the theory of strict liability in hostile environment cases, it established that broader agency factors—when, where, and foreseeability—can be applied without establishing strict liability. *Yates,* 819 F.2d at 639 (Nelson, J., concurring).

In *Yates,* the court specifically held that none of the agency factors "would indicate that Avco should be absolved of the responsibility" for its supervisor's actions. *Yates,* 819 F.2d at 636. The harassment took place at the office; it was carried out by someone with the ability to fire, hire, promote, and discipline employees; and "[t]here is no question that it [the harassment] was foreseeable. Had it not been, Avco would not have had a policy attempting to deal with it." *Yates,* 819 F.2d at 636.

■ However, as indicated in *Yates,* agency liability is not strict and can be negated if the employer responds adequately and effectively once it has notice of the actions. Thus, if Avco's sexual harassment policy had been less flawed, Avco might not have been liable. For, although such a

policy confirms the element of foreseeability and establishes agency, the policy itself, if effective, could serve as an insulation from liability. Indeed, Avco's liability was based on its failure to respond adequately and effectively to the problem when it had notice of its supervisor's proclivities at an earlier date.

■ Under this legal framework for hostile working environment claims, the determination of whether or not Allied is liable for its supervisor's actions depends on 1) whether Butts's harassing actions were foreseeable or fell within his scope of employment and 2) even if they were, whether Allied responded adequately and effectively to negate liability. In granting Allied summary judgment, the district court concluded that:

> Butts' actions were outside the scope of employment, that Allied did not know, or even upon reasonably diligent inquiry, could not have known, that Butts was harassing Kauffman and that Allied's response was prompt and adequate.

While we think that Butts's actions were within the scope of his employment, we agree with the district court that Allied's response was prompt and adequate and thus find no agency liability.

In applying agency principles, the key question is whether the act complained of took place in the scope of the agent's employment. Under *Yates,* the determination requires an examination of the factors of when and where the acts took place, and their foreseeability. The first thing to note is "that even though an act is forbidden it may still be within the scope of employment. Restatement (Second) of Agency § 230" *Yates,* 819 F.2d at 636. In finding agency liability, the *Yates* court focused on the fact that the supervisor had the ability to hire, fire, discipline, and promote the employees.

■ Here, the district court determined that since Butts did not have the ability to fire, hire, promote, and discipline on his own without the ERD, Allied was not liable as Butts did not qualify as its agent under "scope of employment" standards. We dis-

agree. "An individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *modified on other grounds*, 900 F.2d 27 (4th Cir.1990) (en banc). "The supervising employee need not have ultimate authority to hire or fire to qualify as an employer, so long as he or she has significant input into such personnel decisions." *Ibid.* Here, Butts did not have ultimate authority to hire or fire, but he did have significant input in the process. At the very least, a question of fact exists as to whether Butts had enough authority to qualify as an agent and therefore as an "employer" under Title VII.

■ However, even if Butts were acting within the scope of his employment, Allied is protected from liability because its response upon learning of Butts's harassment was adequate and effective. As soon as Kauffman's union representative informed the Director of Employee Relations about Butts's harassment of Kauffman between April 11 and 13, the management immediately confronted Butts and fired him.

Nonetheless, Kauffman argues that Allied's policy against sexual harassment was ineffective and did not work effectively in this case. She points to the fact that neither she nor another co-employee ever knew that such a policy existed, nor had they seen the policy posted anywhere in the factory. In addition, the management had never established any guidelines to deal with the prevention of sexual harassment. There had also been no meetings in the last five years by management with either supervisors or salaried employees on the subject. Finally, appellant points to the testimony of the Director of Employee Relations, who stated that to his knowledge there had never been any meetings with supervisory personnel on the subject of sexual harassment in the workplace.

The gist of the appellant's argument is that the policy was ineffective and that "[m]anagement's termination of Butts was

more of a knee jerk reaction to the incredibly outrageous and senseless acts of Butts rather than reliance on any company policy." As for the adequacy and promptness of Allied's response to Butts's sexual harassment, Kauffman admits that the response was prompt, but denies that it was adequate, characterizing the firing as a reactionary measure rather than a result of an effective, efficient corporate mechanism designed to deal with this type of conduct.

■ Appellant also argues that Allied should be liable under Restatement (Second) of Agency § 219(2)(b), which imposes liability on the part of an employer for the acts of its agent outside the scope of employment whenever the employer is negligent or reckless. Negligence here would be defined as failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care, should have known existed. *Carrero v. New York City Housing Authority*, 890 F.2d 569 (2nd Cir.1989).

These claims of negligence and inadequate policy are not supported by the record. Whatever one may think about the adequacy of Allied's sexual harassment policy *ex ante*, it worked and was adequate in this situation. Allied immediately fired the offending supervisor to correct the hostile working environment which he created. As for Kauffman's post-April 1988 claims—that her house had been under surveillance, that she received various threats and that when she returned to work after the harassment she was placed on three different shifts and given several different job assignments which had never happened before the harassment—these were never alleged in her amended complaint and are not part of this appeal. As the district court held: "[Kauffman] has not included and does not wish to include any allegations of sexual harassment after April 13, 1988."

### III

■ Under a "quid pro quo" theory of sexual harassment, an employer is held

strictly liable for the conduct of its supervisory employees having authority over hiring, advancement, dismissal, and discipline, under a theory of respondeat superior. *Highlander v. KFC Nat'l Management Co.*, 805 F.2d 644, 648 (6th Cir.1986). To prevail under a quid pro quo theory, a plaintiff must assert and prove:

> 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was based on sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.

*Highlander*, 805 F.2d at 648. The two factors in dispute here are whether Butts had plenary authority over Kauffman and whether Kauffman suffered a tangible job detriment.

Under the theory of respondeat superior, employers are held strictly liable for conduct of supervisory personnel who have plenary authority to hire, fire, promote, and discipline employees. *Highlander*, 805 F.2d at 648. The court reasoned that because "Title VII defines 'employer' to include 'a person engaged in an industry affecting commerce ... and any agent of such person,' knowledge of an employment decision based on impermissible sexual factors is imputed to the employer." *Highlander*, 805 F.2d at 649 (citations omitted).

Kauffman argues, as she did in her hostile environment sexual harassment claim, that even though Butts did not have complete authority concerning hiring and firing, nowhere is it required that a supervisor must have complete authority in all respects concerning hiring, firing, and controlling and supervising to be an agent and therefore an employer under Title VII. 42 U.S.C. § 2000e(b). Instead, appellant argues that an individual qualifies as an employer under Title VII if he or she serves in a supervisory position and exercises significant control over the employee's firing, hiring, or conditions of employment. *See Paroline*, 879 F.2d at 104.

■■■■ Appellant is correct in her statement that nowhere is it required that an employee must exercise complete control of plenary duties to qualify as an agent of the employer. Rather, all that is required is that the employee have "significant control" of those duties. However, this still leaves the factual question of whether Butts exerted "significant control" over employment conditions. This is a question of fact that is disputed, and, at the very least, the record presents a material issue of fact as to whether Butts possessed plenary authority over Kauffman. Therefore, summary judgment is inappropriate if Butts's actions resulted in a job detriment to Kauffman.

■■■ The district court held that Kauffman did not suffer a tangible job detriment, as it held that a tangible job detriment must be economic in nature and Kauffman suffered no such economic detriment. However, the only case cited by both the court and the appellee to support this notion is *Mitchell v. OsAir, Inc.*, 629 F.Supp. 636 (N.D.Ohio 1986), a hostile environment case decided while *Vinson* was waiting to be heard by the Supreme Court, which had already granted certiorari. In support of creating a hostile environment cause of action, the court held that

> a supervisor confronted by a woman subordinate who refuses to tolerate a hostile working environment can alter working conditions in subtle ways which would *probably* not be recognized by a *quid pro quo* claim—by giving her less desirable assignments, worse evaluations of her performance, more heavy-handed treatment in the details of day-to-day employment.

*Mitchell*, 629 F.Supp. at 643 (emphasis added). Allied also cites *Shrout v. Black Clawson, Co.*, 689 F.Supp. 774 (S.D.Ohio 1988), which merely states that quid pro quo harassment is "harassment in which a supervisor demands sexual consideration in exchange for *job benefits.*" *Id.* at 780 (em-

phasis added). Neither of these cases explicitly limits tangible job detriments to economic loss.

A broader notion of tangible job detriment is found in *Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777 (1st Cir.1990), where the court held that quid pro quo harassment exists

> "when a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate, *or* punishes that subordinate for refusing to comply." It is the essence of *quid pro quo* harassment that the employee "was subject[ed] to unwelcome sexual advances by a supervisor ... and ... her reaction to these advances affected tangible aspects of ... her compensation, terms, conditions, or privileges of employment...." In rebuttal, the defendant may show that the behavior complained of either did not take place or that it did not affect a tangible aspect of the plaintiff's employment....

*Id.* at 783 (citations omitted) (emphasis in original).

However, even if we find that a tangible job detriment need not be economic, it is not clear that being assigned to a manual machine for a day would qualify as a noneconomic tangible job detriment. While *Highlander* seems to impose strict liability for quid pro quo harassment where there is a tangible job detriment, there may be a *de minimis* exception for temporary actions, such as in this case, or where further remedial action is moot and no economic loss occurred. Given the mandate of *Highlander* and the indeterminate nature of Kauffman's tangible detriment, we remand on the issue of quid pro quo liability to consider the sole issue of the detriment caused by the machine transfer.

 As for Kauffman's state law claims, we affirm the district court's dismissal without prejudice of plaintiff's state law claim of intentional infliction of serious emotional distress in an employment setting because it presents an issue of first impression that would be best settled by the Ohio courts.

At issue is whether Kauffman's claim is time-barred pursuant to Ohio Rev.Code § 4121.80(A), which applies a one-year statute of limitations for employers' intentional torts. Kauffman argues that the four-year period applicable to intentional infliction of emotional distress claims should apply. Ohio Rev.Code § 2305.09. Allied argues that § 2305.09 is preempted by Ohio's Worker Compensation Statute, Ohio Rev. Code § 4121.80. Kauffman submitted her claim of intentional infliction of serious emotional distress to the Industrial Commission of Ohio to determine if it was covered by Ohio's Workers Compensation Laws. Coverage was denied, but plaintiff appealed and is still waiting for disposition of the issue.

 A district court has the power to exercise pendant jurisdiction over state claims that arise out of the same common nucleus of operative fact as the federal claim.[2] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). This exercise of pendant jurisdiction is discretionary and includes consideration of such factors as judicial economy, convenience, and fairness to the litigants. Since such a decision is discretionary, a dismissal of a pendant claim can only be reversed if we find it an abuse of discretion. *McLaurin v. Fischer*, 768 F.2d 98, 104–05 (6th Cir.1985). Given the complexity of the issue, we do not find that the district court abused its discretion in refusing to exercise pendant jurisdiction over the state claim. We leave the state claim to the Ohio state courts.

We AFFIRM the district court's dismissal of Kauffman's hostile environment claim, but REVERSE and REMAND for further proceedings on Kauffman's quid pro quo claim.

**2.** In 1990, Congress passed 28 U.S.C. § 1367, which replaced the concepts of "pendant" and "ancillary" jurisdiction with "supplemental" jurisdiction. However, this statute only applies to civil actions commenced on or after December 1, 1990. Kauffman filed her original complaint on September 12, 1989; therefore, 28 U.S.C. § 1367 does not govern this case.