Margaret M. PETRONE, Plaintiff,

v.

CLEVELAND STATE UNIVERSITY,
et al., Defendants.

No. 1:97CV00177.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 26, 1998.

**1122**

Frank E. Piscitelli, Jr., Broadview Heights, OH, Andrew J. Simon, Cameratta & Simon, Broadview Heights, OH, for Margaret M. Petrone.

Joseph N. Rosenthal, Anna M. Seidensticker, Office of Attorney General, Columbus, OH, for Cleveland State University.

Edward R. Stege, Jr., Kristin W. Sweeney, Hickman & Lowder, Cleveland, OH, for Robert J. Kurtz.

### MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court on the Motion of Defendant Robert J. Kurtz, Ph.D. to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (Document # 47) and the Motion of Defendant Cleveland State University ("CSU") to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for Summary Judgment pursuant to Fed.R.Civ.P. 54(b). (Document # 46). For the reasons discussed below, the Defendants' Motions are granted.

### Procedural and Factual Background[1]

Plaintiff, Margaret Petrone, filed this action against Defendants Cleveland State University ("CSU") and Robert Kurtz, Ph.D., a former supervisor at the CSU Counseling Center, on January 24, 1997, alleging that she was sexually harassed in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. The Complaint also alleged several state law claims. Plaintiff

was given leave to amend her Complaint twice. The Second Amended Complaint, filed on April 28, 1997, in addition to the Title IX and state law claims, includes a claim that Defendants violated 42 U.S.C. § 1983 by invading her privacy, violating her substantive due process rights and denying her equal protection of the laws.

At the time she filed her Complaint, Plaintiff was a 33 year old Ph.D. student at Kent State University working toward a doctorate in psychology. As part of her doctorate program she was required to complete an outside practicum. Plaintiff went to the CSU Counseling Center to perform her outside practicum during the academic year 1995/1996. The program consisted of seeing clients, receiving individual and group supervision and attending seminars. Richard Yates, Ph.D., was director of the Counseling Center. Dr. Kurtz and Dr. Janilee Wheaton were senior staff counselors during Plaintiff's practicum. During the first semester of her practicum, Dr. Wheaton was Plaintiff's individual supervisor. As such Plaintiff met with Dr. Wheaton for one hour each week to discuss Plaintiff's clients and any questions she had regarding her clients. During December, 1995, Dr. Kurtz approached Plaintiff and inquired if she would be interested in switching to him as her supervisor. Plaintiff switched to Dr. Kurtz for the spring semester of 1996.

During the spring 1996 semester, Plaintiff alleges that Dr. Kurtz pursued Plaintiff romantically, asking her out to dinner and for walks, giving her romantic poems, notes and a book entitled "How to Make Love All the Time". Plaintiff also alleges that Dr. Kurtz showed Plaintiff a picture of a rock on which he claimed he and his wife had sex. Plaintiff asserts that Dr. Kurtz spent almost no time discussing her clients. Rather, Dr. Kurtz discussed his love for a former intern; his troubled relationship with his wife; and, sought personal information about Plaintiff. On one occasion Dr. Kurtz placed his hand on Plaintiff's knee and started to slide his

---

1. The factual summary is derived from the facts alleged in the Plaintiff's Second Amended Complaint and the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit or other evidence are stated in the light most favorable to Plaintiff, the non-moving party.

hand up her leg. Plaintiff ended that incident by standing up and moving to another chair.

Plaintiff's practicum concluded in June 1996. Plaintiff received a favorable final evaluation by Dr. Kurtz enabling her to receive course credit for her practicum. Plaintiff also received a favorable recommendation from Dr. Wheaton for each internship for which she applied. Before Plaintiff departed CSU in June 1996, Dr. Yates approached Plaintiff and suggested that she come and talk to him about her practicum experience at the Counseling Center in order to help him evaluate the program. Plaintiff ignored Dr. Yates' request and left CSU without discussing her practicum with Dr. Yates. Two months after she had finished her practicum, Plaintiff received a letter from Dr. Kurtz in August, 1996. In the letter Dr. Kurtz allegedly admitted that he had had an affair with a former intern. As a result of receiving that letter, Plaintiff contacted Dr. Wheaton (more than three months after she left CSU) and sought a meeting with Dr. Wheaton. Plaintiff met with Dr. Wheaton and Dr. Yates on September 6, 1996, and raised for the first time her allegations regarding Dr. Kurtz.

At this meeting, Plaintiff produced the letter she had received from Dr. Kurtz in August 1996, which indicated that he had had an affair with a former intern. The former intern had never complained to anyone at CSU regarding Dr. Kurtz's actions toward her. Plaintiff contends that Dr. Yates suspected that Dr. Kurtz had been romantically involved with the former intern and was monitoring Dr. Kurtz's calls to the former intern in New York. Plaintiff also asserts that Dr. Yates suspected that Dr. Kurtz was pursuing Plaintiff. Dr. Yates testified during his deposition that he was shocked to learn that Dr. Kurtz had an affair with a former intern after the intern's internship at CSU had ended. Dr. Yates also testified that he had an assistant monitor Dr. Kurtz's calls to New York to insure that they were business related and not personal calls. Dr. Yates further testified that he did not know that anything was wrong between Plaintiff and Dr. Kurtz and that they would have taken action if they had any such knowledge. Dr. Yates testified that he was upset that Plaintiff never said anything to him about Dr. Kurtz's actions during her practicum, especially when he had specifically sought her input regarding the entire program.

Upon receiving Plaintiff's complaint regarding Dr. Kurtz, the CSU Director of Affirmative Action, Maria Codinach, was instructed to conduct an investigation of Plaintiff's claims against Dr. Kurtz. Dr. Kurtz was informed by CSU's President Claire Van Ummersen that if the investigation substantiated Plaintiff's allegations, the Provost would recommend his dismissal from his position. Dr. Kurtz was immediately suspended, effective September 17, 1997, pending the conclusion of the investigation into Plaintiff's allegations and a hearing on any resulting charges. Dr. Kurtz never participated again in the Counseling Center and submitted his resignation from CSU on January 21, 1997.

## I. Dr. Kurtz's Motion to Dismiss

Dr. Kurtz moves to dismiss Plaintiff's state law claims (Counts 4, 5, 6, 7, 8, 9, and 11) pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Dr. Kurtz further moves to dismiss Plaintiff's Title IX claims and two of Plaintiff's three § 1983 claims pertaining to invasion of privacy and substantive due process (Counts 1, 2, 3, and part of 10) pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Dr. Kurtz has not moved to dismiss Plaintiff's § 1983/equal protection claim.

### A. State Claims
#### Standard of Review

Dr. Kurtz moves to dismiss Plaintiff's state claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. In considering a "factual attack", brought pursuant to a Fed.R.Civ.P. 12(b)(1) motion to dismiss challenging the court's subject matter jurisdiction based upon the facts as alleged in the pleadings, this court will not presume the allegations of fact in the complaint to be true. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994).

Rather, this court will weigh the conflicting evidence to determine whether the proper jurisdiction exists. See, *Cooley v. United States,* 791 F.Supp. 1294 (E.D.Tenn.1992); *Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). In weighing the evidence, this court has broad discretion to consider affidavits, documents outside the complaint, as well as conduct a limited evidentiary hearing, if necessary, to resolve disputed jurisdictional facts. However, at all times, the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the subject matter. *Ohio Nat'l,* supra, 922 F.2d at 324; *Friedman v. United States,* 927 F.2d 259, 261 (6th Cir.1991); *Moir v. Greater Cleveland Regional Transit Authority,* 895 F.2d 266, 269 (6th Cir.1990); *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 451 (6th Cir.1988); *Rogers v. Stratton Industries, Inc.,* 798 F.2d 913, 915 (6th Cir. 1986).

## Law and Analysis

Dr. Kurtz argues that this Court does not have subject matter jurisdiction over Plaintiff's state law claims because the Ohio Court of Claims has original and exclusive jurisdiction of such claims against a state employee.

■ Dr. Kurtz was a state employee at the time that Plaintiff alleges the violations of state law occurred because he was an employee of CSU, which is an arm of the State of Ohio, protected by the doctrine of sovereign immunity from actions arising under the laws of Ohio. *See Dillion v. University Hospital,* 715 F.Supp. 1384 (S.D.Ohio 1989). Immunity for actions arising under the laws of Ohio is provided to state officers and employees by Ohio Rev.Code § 9.86 as follows:

... no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment of official responsibilities, or unless the officer or employee acted with malicious

purpose, in bad faith, or in a wanton or reckless manner.

■ Ohio Rev.Code § 2743.02 contains the situations in which the state waives its immunity. The Court of Claims has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in § 2743.02. *See* Ohio Rev.Code § 2743.03(A)(1). The Supreme Court of Ohio, in reviewing Ohio Rev.Code § 2743.03(A)(1), determined that "when an action against the state is filed, a course of action against a state employee based on the same act or omission is waived and that waiver is void only upon a finding *by the Court of Claims* that the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." *Nease v. Medical College Hosp.,* 64 Ohio St.3d 396, 399, 596 N.E.2d 432 (1992) (emphasis in the original). Thus, Plaintiff's state law claims against Dr. Kurtz are waived unless it is determined by the Court of Claims that Dr. Kurtz acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

■ Plaintiff argues that her state law claims against Dr. Kurtz are proper because Dr. Kurtz admits that he was acting within the scope of his employment. If Dr. Kurtz were acting within the scope of his employment as a state employee, he would presumably be immune from Plaintiff's state law claims pursuant to § 9.86. It is for the Court of Claims in the first instance to determine whether Dr. Kurtz is entitled to personal immunity under § 9.86 or whether his conduct was manifestly outside the scope of his employment or official responsibilities, or that he acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Accordingly, Plaintiff's state law claims against Dr. Kurtz will be dismissed without prejudice.[2]

## B. Title IX Claims

Dr. Kurtz contends that Plaintiff fails to state a claim against him under Title IX because Title IX does not provide a private

---

**2.** Plaintiff has indicated in oral argument and in her Memorandum in Opposition to CSU's Motion to Dismiss, that she will dismiss her state law

and § 1983 claims against CSU without prejudice, recognizing that CSU is immune from suit in this Court on those claims.

cause of action against individuals. Accordingly, Dr. Kurtz moves that the Title IX claims (counts 1, 2, and 3 of the Second Amended Complaint) be dismissed against him.

Title IX states in pertinent part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .

20 U.S.C. § 1681(a) (West 1990).

On its face § 1681(a) is limited to education programs or activities receiving Federal financial assistance. Thus, most of the courts that have addressed the issue of individual liability under Title IX have determined that there is no individual liability because "program or activity" refers to the educational institution, not to its employees agents. IX *See Smith v. Metropolitan School Dist. Perry Twp.*, 128 F.3d 1014 (7th Cir.1997); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988); *Nelson v. Temple University*, 920 F.Supp. 633 (E.D.Pa.1996); *Clay v. Board of Trustees of Neosho County Community College*, 905 F.Supp. 1488, 1495 (D.Kan.1995); *Doe v. Petaluma City School Dist.*, 830 F.Supp. 1560, 1567 (N.D.Cal.1993). The Sixth Circuit has not directly addressed this issue, however, Sixth Circuit Judge David A. Nelson, in his concurring opinion in *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 730 (6th Cir. 1996), noted "I do not believe that Title IX can appropriately be read as subjecting anyone other than educational institutions to liability for violation of its terms."

Plaintiff points to one district court opinion from the District of Connecticut for support of her position that individuals may be held liable under Title IX. *See Mennone v. Gordon*, 889 F.Supp. 53 (D.Conn.1995). In *Mennone*, the court determined that the language of Title IX does not restrict the potential class of defendants based on their nature or identity (i.e., individual, institution, etc.), but rather based on their function or role in a program or activity. Thus, the court concluded that an individual could be liable under Title IX if he exercised "some level of

control over the program or activity that the discrimination occurs under." *Id.* at 56.

As the majority of the district courts and both circuit courts who have addressed this issue have recognized, the primary purpose of Title IX, enacted pursuant to Congress's spending power, was to prevent discrimination by grant recipients. Thus, only the Federal grant recipient may be sued for discrimination under Title IX. *See Smith, supra*, 128 F.3d at 1019. CSU is the Federal grant recipient in this case, not Dr. Kurtz. Accordingly, Plaintiff's Title IX claims against Dr. Kurtz are dismissed.

## C. § 1983 Claims

Plaintiff alleges in Count 10 of her Second Amended Complaint that:

The Defendants deprived Plaintiff of an education free from sex discrimination and/or harassment and/or sexual abuse and/or other violations of bodily integrity, and as such subjected Plaintiff to loss of her privacy, due process and equal protection in violation of the Ninth and Fourteenth Amendments, all in violation of 42 U.S.C. § 1983.

Dr. Kurtz contends that Plaintiff's invasion of privacy claim and due process claim must be dismissed because Plaintiff failed to plead facts sufficient to support a violation of a constitutional right of privacy or to assert a basis for a due process claim under the Fourteenth Amendment.

### Standard of Review

On a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6), the court's inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808 (3rd Cir.1990). The court must construe the pleadings and affidavits in a light most favorable to the plaintiff. *Jones v. City of Carlisle, Ky.*, 3 F.3d 945, 947 (6th Cir.1993), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994) *quoting Welsh v. Gibbs*, 631 F.2d 436,

439 (6th Cir.1980). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D.Ohio 1993). Thus, a plaintiff must plead more than bare legal conclusions. "[A] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716 (6th Cir.1996) *quoting Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993).

## Law and Analysis

 Section 1983 provides that any person, who under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured …". Thus, to bring a claim under § 1983 the plaintiff must be deprived of a right secured by the Constitution or by federal law. Plaintiff alleges a substantive due process claim, specifically, that Dr. Kurtz violated her rights to bodily integrity and to be free from sexual harassment in violation of the Ninth and Fourteenth Amendments. The same allegations form the basis for Plaintiff's constitutional invasion of privacy claim. The Due Process Clause of the Fourteenth Amendment bars "certain government actions regardless of the fairness of the procedures used to implement them." *Lillard, supra*, 76 F.3d at 724, citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

 The Sixth Circuit has recognized two types of substantive due process claims. The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or federal statute such as the right to be free from unreasonable searches and seizures under the Fourth Amendment. The second type of claim is directed at official acts which may not occur regardless of any procedural safeguards. Such a claim does not require an allegation that some specific guarantee of the Constitution apart from the due process clause be violated. *Lillard, supra*, 76 F.3d at 724. Plaintiff's claim falls into the second category because, as in *Lillard*, Plaintiff does not allege a violation of a specific constitutional guaranty, rather, she alleges a constitutionally protected interest in her personal bodily integrity through the Fourteenth Amendment. *See Lillard, Id.* (Student alleged teacher violated her constitutionally protected liberty interest, within the meaning of the Fourteenth Amendment, in her personal bodily integrity by sexually harassing her by rubbing her stomach while making sexually suggestive remarks.)

 The test for this second type of substantive due process claim is whether the conduct complained of "shocks the conscience" of the court. *Id.* at 724. Although the "shocks the conscience" test is primarily used in excessive force cases, it has been used by the Sixth Circuit in a variety of contexts, including cases such as this where sexual harassment/violation of bodily integrity is alleged by a student against a teacher. *See Lillard, supra*, 76 F.3d 716; *Webb v. McCullough*, 828 F.2d 1151 (6th Cir.1987).

 Accepting all of Plaintiff's allegations as true, the conversations and the one incident of Dr. Kurtz's touching of Plaintiff's leg, while inappropriate, is not of the outrageous and shocking character that is required for a substantive due process violation. While Dr. Kurtz's conduct should, and did result in disciplinary action against him, it was not conduct that creates a constitutional claim. As is discussed below in relation to Plaintiff's Title IX claims against CSU, Plaintiff's allegations against Dr. Kurtz do not establish the existence of a hostile working environment or a quid pro quo sexual harassment under Title VII law. Under no circumstances, then, can it amount to "a brutal and inhuman abuse of … official power, literally shocking to the conscience," sufficient to state a claim for the violation of substantive due process rights. *Lillard, supra*, 76 F.3d at 726. (citations omitted). Accordingly, Plaintiff's due process and invasion of privacy § 1983 claims are dismissed for failure to state a claim.[3]

## II. CSU's Motion to Dismiss or in the alternative for Summary Judgment

The only claims currently pending against CSU are Plaintiff's claims that CSU violated Title IX. Plaintiff alleges that she was subjected to hostile environment and *quid pro quo* sexual harassment by Dr. Kurtz during the five and one half months that he was her supervisor during her CSU practicum.

### Standard of Review

Since both parties refer to deposition testimony and interrogatory answers, the Court will treat CSU's motion as a Motion for Summary Judgment. Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49 (1986). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FRCP 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of sum-

---

**3.** Defendant Kurtz has not moved to dismiss Plaintiff's § 1983 equal protection claim despite the fact that such claim is based on the same allegations as the due process/invasion of privacy claims. Accordingly, the Court will not address the equal protection claim.

mary judgment, where otherwise appropriate.

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.*, 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson*, 477 U.S. at 250.

### Law and Analysis

■■■ The Sixth Circuit has determined that Title VII agency principles apply to sexual harassment cases brought pursuant to Title IX. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 514 (6th Cir.1996). Specifically, the Court noted:

> Because Title VII sexual harassment and sexual discrimination principles have been so well litigated, while Title IX has a short historical parentage, courts have and do resort to Title VII standards to resolve sexual harassment claims brought under Title IX.

*Id.* (citations omitted)

■■■ In this case Plaintiff alleges that Dr. Kurtz's conduct constituted both hostile work environment sexual harassment and *quid pro quo* sexual harassment. To prevail on a *quid pro quo* claim of sexual harassment, Plaintiff must assert and prove: 1) she was a member of a protected class; 2) she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; 3) the harassment was based on sex; 4) her submission to the unwelcome advances was an express or implied condition for receiving job (education) benefits or refusal to submit to a supervisor's sexual demands resulted in a tangible job (educational) detriment; and 5) the existence of respondeat superior liability. *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 186 (6th Cir.1992) *citing Highlander v. KFC Nat'l Management Co.*, 805 F.2d 644, 648 (6th Cir.1986); *Redman v. Lima City School Dist. Bd. of*

*Educ.*, 889 F.Supp. 288, 292 (N.D.Ohio 1995) (citations omitted).

██ The record in this case does not support a *quid pro quo* harassment claim. While Plaintiff can establish the first and third elements of her prima facie case, the second element is problematical and there is no evidence to support the fourth or fifth elements. Plaintiff must establish all five elements to satisfy her prima facie case. Thus, the Court will only address the elements that Plaintiff does not satisfy. With respect to the second element, while Dr. Kurtz's alleged discussions with Plaintiff regarding his relationships with other women, the poems, book and requests that Plaintiff go for a walk with him or to dinner were certainly inappropriate under these circumstances, it is highly doubtful that they constituted requests for sexual favors. Only the single instance of touching, where Plaintiff alleges that Dr. Kurtz touched her leg, could possibly be construed as a sexual advance. Even in that instance the incident ended when Plaintiff moved away from Dr. Kurtz. The record as a whole does not show that Dr. Kurtz sought or demanded sexual favors from Plaintiff.

██ More importantly, with respect to the fourth element, there is absolutely no evidence that Plaintiff had to submit to Dr. Kurtz's so called advances as an express or implied condition for receiving educational benefits or that her refusal to submit to such advances caused any educational detriment. Plaintiff admits that she has suffered no educational damage. She received credit for her practicum and good recommendations from both Dr. Wheaton and Dr. Kurtz. Finally, there is no basis for respondeat superior liability because there is no evidence that Dr. Yates knew or should have known about Dr. Kurtz's conduct regarding Plaintiff. Accordingly, Plaintiff has failed to demonstrate a prima facie case of *quid pro quo* sexual harassment.

██ There are two types of cases under the hostile environment sexual harassment theory; one where the alleged sexual harasser is a co-worker; and, one where the alleged sexual harasser is a supervisor. The test for an employer's liability for the harasser's actions depends on the alleged harasser's employment status vis a vis the victim. In a coworker case the plaintiff must establish the existence of respondeat superior liability in her prima facie case. Where the harasser is the plaintiff's supervisor the plaintiff must establish employer liability under agency principles. *Kauffman, supra,* 970 F.2d at 183–84.

██ In this case, for the purpose of CSU's Motion, Dr. Kurtz is presumed to have been Plaintiff's supervisor. Thus, the elements that Plaintiff must allege and prove to establish her prima facie case of hostile environment sexual harassment discrimination are:

> 1) the employee was a member of a protected class; 2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 3) the harassment complained of was based upon sex; 4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile or offensive working environment that affected seriously the psychological [sic] well-being of the plaintiff and 5) the existence of ... [agency liability].

*Id.* Plaintiff can certainly prove the first element of her prima facie case because as a woman she is a member of a protected class. Plaintiff can also establish the third element of her prima facie case because whether or not Dr. Kurtz's conduct constitutes sexual harassment, the conduct complained of was based upon sex.

It is questionable whether Plaintiff can establish the second element. CSU asserts that Dr. Kurtz's behavior did not constitute a sexual advance or a request for sexual favors or even conduct of a sexual nature. While probably disconcerting and certainly inappropriate, it is not clear that Dr. Kurtz's conversations with Plaintiff or his conduct in giving Plaintiff poems, letters, or books constitute requests for sexual favors or even sexual conduct. Dr. Kurtz's touching of Plaintiff's leg, depending on the circumstances, may or

may not constitute conduct of a sexual nature. Determination of this issue is relevant to the ultimate issues of the case and critical at the summary judgment stage given the Sixth Circuit's recent pronouncement that whether or not a plaintiff has made prima facie case may not be revisited after the case proceeds to trial. *Equal Employment Opportunity Commission v. Avery Dennison Corp.,* 104 F.3d 858, 863 (6th Cir.1997).

This decision places the district court in an untenable situation when a defendant moves for summary judgment. If the district court weighing all of the evidence in a light most favorable to the nonmoving party, pursuant to Fed.R.Civ.P. 56, concludes *a genuine issue of material fact* exists as to whether or not a plaintiff has met the prima facie elements, the court may be prevented from later concluding, after presentation of the plaintiff's case in chief, that plaintiff failed to prove such a prima facie case by *a preponderance of the evidence. See, Id.* at 867 (Ryan, J., dissenting). This dilemma arises because the Sixth Circuit, in interpreting *United States Postal Serv. Bd. v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), concluded that "[t]he fact that the court was faced with the prima facie case question at the summary judgment stage and then allowed the case to go to trial, could be construed as a tacit acknowledgment of Plaintiffs' prima facie case." *Avery Dennison,* 104 F.3d at 861. Thus, "[b]y allowing the case to proceed to trial on the merits, the district court implicitly acknowledged the existence of Plaintiffs' prima facie case." *Id.* at 863. Such a conclusion does not emanate from *Aikens,* however, because that case the Supreme Court concluded that the district court could not revisit whether or not the plaintiffs had proven a prima facie case in a bench trial after previously concluding, at the close of the plaintiffs' case in chief, that the prima facie case had been made. *See Aikens,* 460 U.S. at 714–15; *See also, Avery Dennison,* 104 F.3d at 865–866 (Ryan, J., dissenting).

Not only does the Sixth Circuit's pronouncement in *Avery Dennison, supra,* appear to be a misinterpretation of *Aikens, supra,* it also seems to be in conflict with its own published opinion in *Gafford v. General Electric Co.,* 997 F.2d 150, 168 (6th Cir.1993) wherein the court explained, "[T]he plaintiff in a disparate treatment case must prove to the factfinder, by a preponderance of the evidence, that each component to [the] prima facie case has been satisfied." Thus, in *Gafford* the Court concluded that the district court had not erred when it questioned the jury as to whether the plaintiff had established a prima facie case by a preponderance of the evidence.

Nevertheless, disposition of this case does not rise or fall on the aforementioned determination of whether or not the Plaintiff has met the second element of her prima facie case. Plaintiff must also satisfy the fourth and fifth elements of the prima facie case by showing: (4) that Dr. Kurtz's conduct had the effect of unreasonably interfering with her educational performance and creating an intimidating, hostile, or offensive educational environment that seriously affected Plaintiff's psychological well being; and (5) that CSU is liable for Dr. Kurtz's conduct under agency principles. Plaintiff clearly fails to meet these burdens. There is no evidence that Dr. Kurtz's alleged harassment interfered with Plaintiff's educational performance, that his conduct rose to such a level as to create an intimidating, hostile or offensive educational environment or that his conduct had any affect on Plaintiff's psychological well being. Plaintiff specifically denied any psychological damage in her deposition testimony. Moreover, Plaintiff satisfactorily completed her practicum and received favorable evaluations and recommendations permitting her to continue to the next steps in her Ph.D program. While Dr. Kurtz's behavior was clearly inappropriate and irritating to Plaintiff, the evidence presented does not demonstrate that it was so abusive that it created a hostile educational environment as contemplated under law.

Finally, Plaintiff has failed to demonstrate any agency liability on the part of CSU. The test for determining an employer's liability for a supervisor's harassment under a hostile environment sexual harassment theory is: 1) whether the super-

visor's harassing actions were foreseeable or fell within his scope of employment; and, 2) even if they were, whether the employer responded adequately and effectively to negate liability. *Kauffman, supra,* 970 F.2d at 184. In this case, the record demonstrates that CSU responded adequately to negate liability when it was informed of Dr. Kurtz's actions. Plaintiff reported Dr. Kurtz's actions three months after her practicum had ended. Upon receiving Plaintiff's complaints, Dr. Kurtz was immediately suspended pending an investigation; (essentially he was presumed guilty) and, in fact, had no further supervisory or other involvement with the Counseling Center. Dr. Kurtz resigned from CSU without ever returning to work at the Counseling Center. Thus, CSU's response, upon being notified by Plaintiff of Dr. Kurtz's conduct, was clearly prompt, complete and effective. Moreover, Plaintiff's argument that CSU should have known about Dr. Kurtz's conduct before she reported it is unsupported by any admissible record evidence. Accordingly, Plaintiff has failed to establish a prima facie case of discrimination under the theory of a sexually hostile environment under Title IX as demonstrated by the foregoing Title VII analysis . . .

### Conclusion

For the foregoing reasons, Defendant Dr. Kurtz's Motion to Dismiss (Document # 47) is GRANTED and the Motion of CSU to Dismiss or for Summary Judgment (Document # 46) is GRANTED. This Action is DISMISSED WITH PREJUDICE, except for Plaintiff's § 1983 equal protection claim against Dr. Kurtz which remains and the state law claims against Dr. Kurtz which are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

### JUDGMENT ENTRY

Pursuant to a Memorandum Opinion of this Court, the Motion of Defendant Robert J. Kurtz, Ph.D., to Dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6) (Document # 47) is GRANTED and the Motion of Defendant Cleveland State University ("CSU") to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for Summary Judgment pursuant to Fed.R.Civ.P. 54(b) (Document # 46) is GRANTED. This Action is DISMISSED WITH PREJUDICE, except for Plaintiff's § 1983 equal protection claim against Defendant Dr. Kurtz which remains and the state law claims against Dr. Kurtz which are DISMISSED WITHOUT PREJUDICE. All costs to Plaintiff.

IT IS SO ORDERED.