Rachel Michelle STACY, Plaintiff,

v.

SHONEY'S INCORPORATED, Defendant.

Civil Action No. 96–018.

United States District Court, E.D. Kentucky.

Feb. 27, 1997.

J. Randall Reinhardt, Laura Anne Kincheloe, Reinhardt, Morgan, Arnold & Isaacs, Lexington, KY, for plaintiff.

**752**

John Armstrong West, James G. Lemaster, Stephanie Hall Prewitt, Greenebaum, Doll & McDonald, P.L.L.C., Lexington, KY, Richard S. Cleary, Greenebaum, Doll & McDonald, Louisville, KY, for defendant.

## OPINION AND ORDER

FORESTER, District Judge.

This matter is before the Court on the motions of the defendant, Shoney's Inc., for summary judgment and to dismiss plaintiff's claim for intentional infliction of emotional distress. Also before the Court is plaintiff's motion to reconsider striking plaintiff's claim for punitive damages. All matters are ripe for review.

## I. INTRODUCTION

Plaintiff, Rachel Michelle Stacy ("Stacy") brought this sexual harassment action against her former employer, Shoney's Inc. ("Shoney's"), pursuant to the Kentucky Civil Rights Act, KRS Chapter 344, on the basis of unlawful discriminatory practices relating to the employment and constructive discharge of plaintiff in connection with her gender in violation of KRS 344.040 and KRS 344.280. Stacy alleges that her immediate supervisor, Paul Kimbrell, who had significant control over plaintiff's employment relationship with Shoney's, "perpetrated a pattern of continuing, obvious and pervasive harassment against plaintiff, creating a hostile work environment for plaintiff." *Plaintiff's Complaint*, ¶ 5, 9. Further, plaintiff alleges that "defendant Shoney's had knowledge of Paul Kimbrell's intentional acts and failed to take appropriate action to correct the situation. *Plaintiff's Complaint*, ¶ 13. Finally, Stacy submits that her working environment was so intolerable that she was forced to quit working at Shoney's.

## II. FACTS AND PROCEDURAL HISTORY

For purposes of summary judgment, the Court views the facts in the light most favorable to the plaintiff.

### A. Stacy's Employment History with Shoney's

On February 24, 1995, Stacy applied for a job at Shoney's Richmond Road location. Cheryl Kimbrell, the Dining Room Manager, hired Stacy for the position of hostess/server at $6.00/hr., Stacy began work at Shoney's on February 25, 1995. Approximately one month after Stacy began working at Shoney's, Paul Kimbrell asked Stacy if she would be interested in becoming the Dining Room Manager. On March 20, 1995, Stacy filled out a form entitled "Application for Store Management," in which she indicated that she was applying for a promotion to the position of Dining Room Manager. Thereafter, Stacy met with Paul Kimbrell and Bob Dorsey ("Dorsey"), Shoney's district manager, to discuss the Dining Room Management position. Stacy contends she was told that she had a job in management and that her salary would be $350.00/wk. plus full benefits. Stacy was given manuals to study for the new position. At some point in time prior to her last day of employment at Shoney's, Stacy began training to become the Dining Room Manager. As a part of her training, Stacy acted as Dining Room Manager while Cheryl Kimbrell was on vacation. It is important to note that Stacy never earned more than $6.00/hr., nor did she receive any benefits while she worked at Shoney's, and she did not ever officially bear the title of Dining Room Manager.

### B. Stacy's Basis for her Sexual Harassment Charge

In her complaint, Stacy alleges that Paul Kimbrell "perpetrated a pattern of continuing, obvious and pervasive harassment against plaintiff, creating a hostile work environment for plaintiff." After reading Stacy's deposition and the exhibits attached thereto, the Court determined that Stacy bases her sexual harassment and her constructive discharge claims on the following alleged comments made by Paul Kimbrell:

1) daily comments to Stacy that her tan looked good and that he wished that he could see more of it;

2) comment to Stacy that he liked it better when she wore her hair down;

3) in response to Stacy's request for a cigarette, statement that she could have anything she wanted from him and asked if there was anything else that she wanted;

4) after asking if it would cause a problem with her husband if she stayed after work to go over her training manuals, comment that if he had someone that looked like Stacy he would not let her leave the house;

5) daily comments regarding Stacy's appearance, which plaintiff never identified with specificity;

6) statement that he would move in with Stacy and take care of her in response to Stacy's statement that it was awkward sharing an apartment with another couple;

7) comment that all Stacy had to do was stand there and look pretty in response to Stacy's question about the duties of a Dining Room Manager;

8) statements made several times over the phone to Stacy at work indicating that he missed her;

9) in response to the dishwasher's question of whether or not Stacy was his sister, comment that he never had a sister that looked like that;

10) daily "ssshh" sounds made as Stacy walked off from him; and

11) comment that Stacy and he could work the night shift together.

The Court also determined that Stacy bases her claims on Kimbrell's alleged daily leers at Stacy and on the physical contact that arose from the "pen incident".[1]

From the record the Court gleaned that Stacy never told Kimbrell that she objected to his behavior; rather she ignored him.

---

**1.** While discussing a work related topic and in front of another Shoney's employee, Kimbrell approached Stacy, touched his fist to her breast and slid her dime-store pen up and then down in her breast pocket and commented that he liked her pen.

**2.** The dispute as to what position Stacy held on her last day of work is not material to the Court's decision. Shoney's contends that Stacy held the

### C. Shoney's Remedial Action

On April 17, 1995, the day after the "pen incident", Stacy contacted Dorsey and informed him that she needed to talk with him. He directed her to meet him at his office at the Shoney's on Winchester Road that day. At their meeting Stacy told Dorsey about the comments (cited above) allegedly made by Kimbrell and about the "pen incident". Dorsey told Stacy that she did the right thing in coming to talk with him. He assured her that her job was not in jeopardy and told her that he would take care of everything. At this time, he directed Stacy to write down all of the things that Kimbrell had said and/or done about which she now asserts in support of her sexual harassment claim.

Dorsey subsequently conducted an investigation during which he questioned the other Shoney's employees at the Richmond Road location, including Kimbrell. A few days into the investigation, Dorsey stopped by Stacy's house to reassure her that her job was not in jeopardy and to advise her that someone from corporate would be talking with Kimbrell.

While the investigation was ongoing, on April 19, 1995, Stacy applied for and obtained employment with Hardin Food, Inc., which owns and operates Western Steer restaurant in Lexington. She began working at Western Steer on April 20, 1995.

At the conclusion of the investigation on April 25, 1995, although Dorsey could not verify any of Stacy' complaints, Kimbrell received a verbal warning and Stacy was informed that she: (1) could stay and work at Shoney's Richmond Road restaurant with Kimbrell; (2) transfer to another restaurant in the same position and at the same rate of pay;[2] or (3) Shoney's could transfer Kim-

position of hostess/server, as she was never officially given the Dining Room Manager position, never earned the Dining Room Manager salary, or ever received the benefits which accompany that position. Stacy contends that she held the position of Dining Room Manager because Kimbrell and Dorsey promised her that job before she started training for it, which predates her departure date from Shoney's.

brell to another restaurant and Stacy could stay at the Richmond Road location.

It is significant to note that although Stacy did not work during the week of the investigation, she was paid for it, and further, that Stacy never returned to work at any Shoney's restaurant.

## III. STANDARD

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact for trial and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must consider all pleadings, depositions, affidavits, and admissions on file and draw reasonable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see Smith v. Hudson,* 600 F.2d 60 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. To sustain this burden, she may not rest on the mere allegations of her pleadings. Instead, she must set forth specific facts showing that there is a genuine issue for trial. *Potters Med. Center v. City Hosp. Ass'n.,* 800 F.2d 568 (6th Cir.1986). Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). The Court will apply these standards to the case at bar and determine whether or not Shoney's is entitled to summary judgment.

## IV. ANALYSIS

■ Stacy alleges sexual harassment under the Kentucky Civil Rights Act, KRS Chapter 344. KRS 344.040, provides in part,

It is an unlawful practice for an employer: (1) To ... discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age....

KRS 344.040(1). As claims for sexual harassment brought under the Kentucky statute are to "be interpreted consonant with federal interpretation" of Title VII claims, this Court relies heavily on Title VII cases in determining whether or not the facts alleged state a claim under KRS Chapter 344 for sexual harassment. *Hall v. Transit Auth. of Lexington–Fayette Urban Cty. Gov't.,* 883 S.W.2d 884, 886 (Ky.App.1994).

Stacy asserts a claim for "hostile work environment harassment" based on the alleged comments and actions of her supervisor. *Kauffman v. Allied Signal, Inc.,* 970 F.2d 178, 182 (6th Cir.1992), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992) (held there are two types of hostile work environment harassment, those where the alleged harasser is a co-worker, and those where the alleged harasser is a supervisor). A hostile work environment harassment claim arises "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), *quoting Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

In order to establish a *prima facie* case of hostile work environment sexual harassment, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with her work performance and creating an intimidation, hostile, or offensive working environ-

ment;[3] and (5) employer liability. *Kauff-man v. Allied Signal, Inc.,* 970 F.2d at 178. Stacy cannot establish that the conduct complained of gives rise to a claim of hostile environment sexual harassment, nor can she establish employer liability.

■■■ Whether the conduct complained of rises to the level sufficient to create a hostile work environment is a legal question that a court may address on summary judgment motion. *Blankenship v. Parke Care Centers, Inc.,* 913 F.Supp. 1045, 1051 (S.D.Ohio 1995).

> The concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women. . . . It is not designed to purge the workplace of vulgarity. Drawing the line is not always easy. On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers

*Baskerville v. Culligan International Co.,* 50 F.3d 428, 430–431 (7th Cir.1995), *(citations omitted ).*

■■■ In determining whether or not the harassing conduct is "sufficiently severe or pervasive" to constitute actionable sexual harassment, the court considered the following factors:

(1) the frequency of the discriminatory conduct;

(2) its severity;

(3) whether it is physically threatening or humiliating, or a mere offensive utterance; and

(4) whether it unreasonably interferes with an employee's work performance.

*Harris v. Forklift Systems, Inc.,* 510 U.S. at 22–24, 114 S.Ct. at 371. The Court finds that the conduct of Paul Kimbrell, while immature, inappropriate, and boorish, does not constitute offensive conduct actionable as

harassment, especially in light of the alleged actions of harassers sued in the cases cited below, which various courts found did not give rise to a claim of hostile environment sexual harassment. *See, e.g., Rabidue v. Osceola Refining Co.,* 805 F.2d 611 (6th Cir. 1986) (Sixth Circuit did not find actionable sexual harassment where (1) male supervisor referred to a female manager as "whore," "cunt," "pussy," and "tits" and stated "all that bitch needs is a good lay," and (2) the Company forced her to sit with female hourly employees during meetings, forbid her taking clients to lunch, and tolerated posters of scantily clad women in work areas), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Baskerville v. Culligan Intern. Co.,* 50 F.3d 428 (7th Cir.1995) (held the following did not constitute sexual harassment: supervisor called the plaintiff "pretty girl", made grunting sounds like "um-um" when plaintiff wore a leather skirt, stated "all pretty girls run around naked", and stated that "with so many pretty girls", he "didn't want to lose control"), *cited by Black v. Zering Homes, Inc.,* 104 F.3d 822 (6th Cir.1997) (held comments directed to the plaintiff including, "Nothing I like more in the morning than sticky buns", and "Hey weren't you there [at the biker bar] Saturday night dancing on the tables?", and references to property parcels as "Hootersville" and "Twin Peaks", did not give rise to a sexual harassment claim); *Koelsch v. Beltone Elec. Co.,* 46 F.3d 705 (7th Cir.1995) (held supervisor who stroked plaintiff's leg on one occasion, grabbed her buttocks on a separate occasion, told her that he found her attractive, and twice asked her out on dates, did not commit acts which were actionable); *Weiss v. Coca-Cola Bottling Co. of Chicago,* 990 F.2d 333, 337 (7th Cir.1993) (held actions of supervisor unactionable even though he called subordinate "dumb blond", placed "I love you" signs in her work area, asked her for a date, put his hands on her shoulder, and tried to kiss her); *Saxton v. American Tel. & Tel. Co.,* 10 F.3d 526, 534 (7th Cir.1993) (held the following acts did not constitute sexual harassment: supervisor made inappropriate

---

**3.** This element is to be measured by both a subjective standard and an objective standard.

*Harris v. Forklift Systems, Inc.,* 510 U.S. at 20–22, 114 S.Ct. at 370.

remarks, kissed and repeatedly touched the plaintiff, and chased her around a forest preserve); *Stoeckel v. Envtl. Management Sys., Inc.*, 882 F.Supp. 1106 (D.D.C.1995) (held employee's attempts to kiss plaintiff, his lewd remarks about her appearance, his following plaintiff around the office, his unsolicited neckrubs, and hand-holding did not rise to the level of severity and pervasiveness); *Gearhart v. Eye Care Centers of America*, 888 F.Supp. 814, 825 (S.D.Tex.1995) (held unactionable supervisor's conduct although supervisor touched plaintiff's breast and hair, kicked her in the buttocks, and made numerous lewd remarks directed at plaintiff); *Lefevre v. Design Professionals Ins.*, 1994 WL 514020 (N.D.Cal.1994) (supervisor's repeated handshakes and hugs at business meetings and references to plaintiff as "babe" did not create an objectively hostile work environment); *Ballou v. University of Kans. Med. Ctr.*, 871 F.Supp. 1384 (D.Kan.1994) (held defendant's actions did not constitute sexual harassment where supervisor defendant asked plaintiff about her interest in a romantic relationship, asked her to kiss him on her birthday, often stared at her and followed her).

 Not only does the Court find that Kimbrell's conduct, albeit pestering and obnoxious, is not actionable, the Court further finds that Stacy cannot establish employer liability. Employers are not liable via *respondeat superior* for their employees' actions in the context of a hostile environment sexual harassment claim. Rather, in order for an employer to be found liable for hostile environment harassment, a plaintiff must demonstrate that the supervisor's harassing actions were foreseeable or fell within the scope of his employment and that the employer failed to respond adequately and effectively to correct the situation. *See Pierce v. Commonwealth Life Insurance Co.*, 40 F.3d 796, 803 (6th Cir.1994). In the case at bar, Shoney's responded promptly to Stacy's claim. Immediately after Stacy and Dorsey met to discuss Stacy's problem with Kimbrell at the Richmond Road Shoney's, Dorsey conducted an investigation, reprimanded Dorsey, and offered Stacy the choice of, returning to work at the Richmond Road restaurant,

transferring to another Shoney's, or having Kimbrell transferred from the Richmond Road restaurant. Stacy submits that Shoney's should have presented her with the option of transferring to another Shoney's in a management capacity. Plaintiff is incorrect, not because she did not hold the position of Dining Room Manager,[4] but because Shoney's fulfilled its obligation under the law by giving Stacy the option of returning to the Richmond Road restaurant after verbally warning Kimbrell. *See Maher v. Assoc. Services for the Blind*, 929 F.Supp. 809, 814 (E.D.Pa.1996) (held oral warning may be sufficient). Shoney's is only liable if it did not respond adequately or effectively; Shoney's is not obligated to provide plaintiff the remedy of her choice. Effectiveness is measured not by the extent to which the employer disciplines or punishes the alleged harasser, but rather if the steps taken by the defendant halt the harassment. *Bouton v. BMW of N.Am., Inc.*, 29 F.3d 103, 110 (3d Cir. 1994). Because Stacy never returned to work at the Richmond Road restaurant, she cannot show that Shoney's action was ineffective. Hence, Stacy cannot establish Shoney's liability.

Stacy also asserts a claim for constructive discharge due to the alleged harassment of Kimbrell. To prevail on her claim for constructive discharge, Stacy must establish that the working conditions at Shoney's would have been so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign. Courts have held that a constructive discharge claim requires the plaintiff to present evidence of "aggravating factors" including a demonstration of "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Landgraf v. USI Film Products, Inc.*, 968 F.2d 427 (5th Cir.1992), *aff'd.* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). As the Court has found that the facts at bar do not support a hostile work environment claim, the Court now finds that they clearly do not support a constructive discharge claim.

---

4. The Court is not making a finding as to what position plaintiff held when she quit working at

Shoney's. For purposes of the Court's decision, the conclusion is irrelevant.

## V. CONCLUSION

Accordingly, the Court, being otherwise sufficiently advised, HEREBY ORDERS THAT:

(1) the motion of the defendant, Shoney's Inc., for summary judgment [docket entry 45] is GRANTED, and summary judgment will be entered contemporaneously with this opinion and order in favor of Shoney's Incorporated;

(2) the motion of the defendant, Shoney's Inc., to dismiss [docket entry 42] IS DENIED AS MOOT;

(3) the motion of the plaintiff, Rachel Stacy, to reconsider [docket entry 41] IS DENIED AS MOOT; and

(4) the pretrial conference of March 3, 1997, and the jury trial of April 8, 1997, are SET ASIDE.