**KLEMENCIC, Plaintiff,**

v.

**OHIO STATE UNIVERSITY,
et al., Defendants.**

No. 94CV00181.

United States District Court,
S.D. Ohio,
Eastern Division.

July 14, 1998.

**912**

Seymour R. Brown, Cleveland, OH, for Denise C. Klemencic.

Elizabeth McCool Stanton, Moots Cope & Stanton - 2, Columbus, OH, David P. Katko, Ohio Attorney General - 2, Employment Law Section, Columbus, OH, for Ohio State University.

Jack Wilson Decker, Anna M. Rouhana Seidensticker, Ohio Attorney General - 2, Employment Law Section, Columbus, OH, Maria Celeste Cook, Ohio Attorney General - 2, Education Section, Columbus, OH, for Thomas Ed Crawford.

Elizabeth McCool Stanton, Moots Cope & Stanton - 2, Columbus, OH, for James L. Jones.

1. Plaintiff's Motion to Surreply (doc. 100) is **GRANTED.**

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on Defendant Thomas Ed Crawford's Motion for Partial Summary Judgment (doc. 76), and Defendant Ohio State University's Second Motion for Summary Judgment (doc. 77), to which Defendant Crawford joins in part (doc. 78), and which joins Defendant Crawford's Motion for Partial Summary Judgment. The motions have been fully briefed.[1] Oral arguments on the motions were held on June 3, 1998, and the motions are ripe for decision.

### II. BACKGROUND

In March of 1994, Denise C. Klemencic ("Klemencic") filed a lawsuit against The Ohio State University ("OSU"), Crawford, and James L. Jones ("Jones"). Klemencic transferred from Miami University to OSU in 1989 and was a student at OSU from 1989 to 1994. She was a member of the OSU Women's Track and Cross Country Teams for two years from 1990–91 to 1991–92, after being "red-shirted" her first year there. After the 1991–92 school year, Klemencic's athletic eligibility expired. Thomas Ed Crawford ("Crawford") was an Assistant Coach of the two women's teams from the Fall of 1990 until the Fall of 1993, and coached Klemencic during her two years on the teams. Jones, at all times pertinent to this lawsuit, was the Athletic Director at OSU.

Klemencic alleged that she was subject to *quid pro quo* sexual harassment by Crawford, and as a result, was denied "access to the team." She brought claims under Title IX of the Civil Rights Act of 1972 against OSU, and both Crawford and Jones in their official capacities. She also brought claims under 42 U.S.C. § 1983 for violation of her rights under the Fourteenth Amendment as well as various state law claims against both Jones and Crawford in their individual capacities.

During the 1991–1992 school year, Klemencic alleges that an understanding developed that she would be permitted to serve as a volunteer assistant coach on the Women's Track and Cross Country Teams and/or train

with the teams during the 1992–93 school year even though her NCAA eligibility to compete as a member of the team had expired. Specifically, Klemencic alleges that Crawford offered her the opportunity to train with the team and be a volunteer assistant coach during the 1992–93 school year with the understanding that the offer was subject to the approval of the head coach and/or Athletic Department. Klemencic testified that Crawford told her "that if Mamie [Rallins] would not let me train with the team on the track that he would train me after practices at some local high schools."

Klemencic alleges that in June 1992, Crawford "disclosed ... that he wanted a sexual relationship" with her, and that she refused. She also asserts that a second similar conversation occurred some three days later outside of her apartment. After this second refusal, Klemencic testified that Crawford asked her what she was going to do about training the following year since she was so angry with him for asking her out. She admits she replied that she was not sure she wanted him to coach her anymore and that she would have to decide what she was going to do about that. Plaintiff never contacted Crawford again until September.

Allegedly as a result of her refusals, Klemencic was denied the opportunity to train or to serve as volunteer coach with the OSU Women's Track and Cross Country Teams during the 1992–93 school year. Klemencic alleges that when she called Crawford in early September 1992 to find out what the training schedule would be, he told her that she would not be training with the team that season because of her "bad attitude" and because he did not believe that she was in physical condition to compete with the eligible athletes on the team because she had not worked out over the summer. After some discussion, Klemencic admits that Crawford offered her the opportunity to take a time trial, and that if she passed, he would allow her to train with the team. Klemencic refused the offered time trial.

Although during 1992, Klemencic met on several occasions with Jones and other representatives of the Athletic Department about an unrelated grievance she and other members of the team had filed against the head coach, Mamie Rallins, she did not once complain about the alleged harassing conduct of Crawford. The first time Klemencic complained about Crawford's conduct, she did so first to her head coach on September 4, 1992, and then in a meeting with Jones five days later. Jones then met with Crawford on September 15, 1992, and placed a written reprimand in Crawford's file on December 10, 1992.

On October 8, 1992, Jones met with and informed Klemencic that he had met with Crawford, who he said had admitted to asking her out, and that he had instructed Crawford in the strongest terms possible on what would and would not be tolerated at the University. Klemencic testified that she expressed her concern that Crawford was still traveling alone with the women's teams, and Jones replied that that was Crawford's job, and nothing could be done about it. Klemencic also questioned the fact that she was still not allowed to practice with the team, and Jones allegedly replied "I can't force Crawford to coach you. His job is to coach athletes with eligibility." Jones later testified that he did not reinstate Klemencic to the team because she was no longer eligible. His philosophy was that coaches should work only with eligible athletes unless they are of Olympic caliber, and he did not believe Klemencic was of Olympic caliber.

Klemencic also met with several other persons within the University in an attempt to get further relief from the alleged harassment and/or punishment of Crawford. She testified that she met with: Carol Kennedy, the NCAA faculty liaison; Patricia Williams, a mediator with Ombudsmen Services; Dr. Christine Rideout, a psychologist with the University's Counseling Services; Cynthia Zachery–Smith, Director of Women's Student Services; Helen Ninos, an attorney with Dispute Resolution Services at the University; and that she also attempted to meet with President Gee. In addition, Klemencic testified that she met or spoke with both Dick Finn and Steve McConnell in the Athletic Department about unrelated NCAA rules violations she believed Crawford had committed.[2]

2. Apparently, Klemencic was also attempting to

report and establish that Crawford had engaged

However, Klemencic did not file a written sexual harassment complaint with the University Human Resource Department in the Office of Dispute Resolution until January 4, 1993. Ms. Carr–Williams of the Office of Dispute Resolution conducted an investigation of Klemencic's complaint pursuant to the University's sexual harassment policy and procedure. On March 5, 1993, in a letter to Jones and Crawford, Carr–Williams concluded that the evidence supported that Crawford had violated the sexual harassment policy of the University. She recommended the Department keep the reprimand letter in Crawford's file for one year, and permanently in a file in Human Resources, and require Crawford to go through counseling and a training session on sexual harassment. Both recommendations were implemented.

Carr–Williams also recommended that Klemencic be allowed to train with the team. According to Carr–Williams, she also orally informed Klemencic by phone that she could train with the team. Klemencic purportedly declined the offer. However, Klemencic denies that she ever received an offer from Carr–Williams to train with the team, and that she declined such an offer. Klemencic testified that she would have wanted both to train with the team and the volunteer assistant position. She did admit, however, that while she wanted to run again, "at that point it was pretty impossible," due to her teammates' attitudes, and that she "could not return in an atmosphere like that." Instead, she "wanted justice to be done."

All the parties filed motions to dismiss or for summary judgment in 1995. In a June 25, 1996 Order, this Court denied Plaintiff's motion for summary judgment in its entirety, granted Defendants Jones's and Crawford's motions to dismiss Plaintiff's Title IX claims against them in their individual capacities, granted Defendant Jones's motion to dismiss Plaintiff's § 1983 claim against him in his individual capacity, and dismissed without prejudice Plaintiff's state law claims for lack of jurisdiction. Remaining were Plaintiff's claim under Title IX against OSU, and her

claim under § 1983 against Crawford for denying her due process and equal protection of the law.[3] Defendant Jones was dismissed entirely from the case.

For the first time on February 16, 1998, Plaintiff began to characterize her Complaint as raising a sexually hostile environment claim as well as a *quid pro quo* claim. Klemencic had alleged that in July 1991, Crawford mailed to her a sexual suggestive photograph and article cut from a tabloid magazine. However, at her deposition, Klemencic did not identify that act as one she considered to be harassment. On March 27, 1998, Defendant Crawford filed a Motion for Partial Summary Judgment as to the newly identified hostile environment claim. In addition, since the law under Title IX had developed substantially since this Court's June 25, 1996 Order, Defendant OSU filed a Second Motion for Summary Judgment on All Liability Issues on March 31, 1998. It is to these motions to which the Court now turns.

### III. STANDARD ON SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of a genuine issue of material fact on an essential element of that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, Matsushita Electric Industrial Co., Ltd. v.*

in unrelated actions which violated the NCAA rules governing athletes.

**3.** Crawford's argument for qualified immunity from Plaintiff's § 1983 claim was rejected by this

Court, and affirmed on appeal to the Sixth Circuit. *See, Klemencic v. Ohio State University and Ed Crawford*, 111 F.3d 131 (6th Cir.1997).

*Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (quoting *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## IV. DISCUSSION

### A. *Plaintiff Fails to Present Evidence Sufficient to Establish a Hostile Educational Environment under Title IX*

Both Defendants argue that Plaintiff has waived any hostile environment claim since throughout the course of these proceedings, which were instituted in 1994, Plaintiff has identified her claim as only a *quid pro quo* claim, and she has never once asserted a hostile environment claim until identifying it in February 1998. However, this Court need not reach the issue of whether Plaintiff waived her claim for a hostile educational environment, because Plaintiff fails to present evidence sufficient to establish a claim for

hostile educational environment under Title IX.

■ To prevail in a hostile environment action under Title VII, a plaintiff must assert and prove:

(1) The employee was a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (5) the existence of respondeat superior liability.

*Kauffman v. Allied Signal Inc.*, 970 F.2d 178, 183 (6th Cir.), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). The Sixth Circuit has held that "the elements to state a supervisory hostile environment claim under Title VII equally apply under Title IX." *Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 514 (6th Cir.1996). The Title VII framework likewise applies to equal protection claims brought pursuant to 42 U.S.C. § 1983. *Poe v. Haydon*, 853 F.2d 418, 430 (6th Cir.1988) *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). Thus, Klemencic's purported claims for a hostile educational environment against OSU under Title IX and against Crawford under § 1983 are subject to the same analysis.

■ In order for Plaintiff to meet the fourth element of her claim, she must allege conduct with sexual overtones that is "sufficiently severe or pervasive" to affect a "term, condition or privilege" of her education and "create an abusive [educational] environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court explained that the conduct in question must be judged by both an objective and a subjective standard, *i.e.*, (a) the conduct must be severe or pervasive enough to create an

environment that a reasonable person would find hostile or abusive; and (b) Plaintiff must subjectively regard the environment as abusive. The Court went on to explain some of the relevant factors to consider:

> [T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Id.,* 510 U.S. at 23, 114 S.Ct. 367. Whether the Defendant's alleged conduct rises to a level sufficient to create a hostile environment is a legal question that may be addressed on summary judgment. *Blankenship v. Parke Care Centers, Inc.,* 913 F.Supp. 1045, 1051 (S.D.Ohio 1995), *aff'd,* 123 F.3d 868 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998); *see also Black v. Zaring Homes, Inc.,* 104 F.3d 822 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997).

◼ Notwithstanding Klemencic's subjective claim of psychological injuries, her claim of a hostile educational environment, considered under an objective standard, must fail because the conduct of which she complains was not sufficiently severe or pervasive to support a hostile environment claim. First, much of the conduct complained about by Klemencic was neither unwelcomed, conduct of a sexual nature, nor hostile. Klemencic argues that Crawford sought to increase his personal involvement in her private life. For instance, Klemencic argues that Crawford offered and gave her rides home from practice; called her at home to discuss both team and personal matters; requested that she pick him up at the airport upon his return from a trip, which she did; twice offered her the opportunity to stay at his apartment when her lease was about to expire and she had no other arrangements; and began to interfere with her relationship with her boyfriend by reporting to him that she had received rides home from another man.

Plaintiff's own deposition testimony, however (which counsel for Plaintiff elected not to refer to in making his argument), reveals that she and Crawford enjoyed a good friendship during the period in which this conduct is to have occurred. There is no evidence in the record before this Court that Klemencic subjectively viewed this conduct as hostile or abusive or harassment at the time, and neither does this Court. *See Harris,* 510 U.S. at 21–22, 114 S.Ct. 367. Nor is there evidence that this alleged conduct had "the effect of unreasonably interfering with the plaintiff's [educational] performance and creating an intimidating, hostile, or offensive [educational] environment that affected seriously" her psychological well-being, at least until June, 1992, when the alleged sexual advances occurred. *See Yeary v. Goodwill Industries–Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir.1997), citing *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 619–20 (6th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

Second, Klemencic complains about a June 15, 1992 telephone conversation between she and Crawford, in which Crawford allegedly told her that she was his best friend, good looking and a nice person, and in which he asked her to go out with him. According to Klemencic, Crawford mentioned that "he could go out and get a prostitute, or he could have one night stands, but that would not be the same, because he wanted to be with someone he cared about." Klemencic refused the request. Klemencic said that she was "sick to her stomach" because Crawford had "crossed the line" between coach and athlete, but she did not end the conversation because Crawford was her coach. Nor did Klemencic ask Crawford not to contact her again. Three days later on June 18, 1992, Klemencic alleges that Crawford met her outside her apartment building and engaged her in further discussion about her refusal of his request. In the end, Klemencic alleges that Crawford indicated that "if you ever want to go out with me, I would like to go out with you." Neither conversation included any explicit mention of or request for sexual activity.

This Court finds this evidence insufficient to support a finding that the alleged conduct was severe or pervasive enough to create an objectively hostile educational environment. However Plaintiff may want to characterize Defendant Crawford's requests for Klemencic to go out with him, two requests to establish a dating relationship and an accepted refusal does not create an objectively hostile environment, nor is it the kind of conduct intended to be eradicated by Title IX.[4]

While there may be a dispute about whether Klemencic viewed the receipt of the allegedly sexually suggestive photograph and article cut from a tabloid magazine on July 2, 1991 as hostile or unwelcome,[5] even considering this act, the alleged conduct does not meet the objective requirements of such a claim under Title IX. Viewing the totality of the circumstances, this Court finds that even when construed in a light most favorable to Plaintiff, the conduct alleged by Plaintiff does not appear to have been more than "merely offensive," if offensive at all. *See Zaring Homes, Inc.*, 104 F.3d at 826 (citing *Harris*). The two conversations in which Crawford asked Klemencic out were not explicitly sex-based, and had, at best, only ambiguous and implicit references to sex at all. The conversations could not fairly be described as frequent since they occurred only twice over a period of several years. In addition, Plaintiff complains about only one offensive article being sent to her during that period by Defendant Crawford. Moreover, none of the alleged conduct by Crawford was physically threatening or humiliating.

While the requests to go out may have been inappropriate in the University context, and offensive to Klemencic personally, mere invitations to "go out" are not the stuff of which a hostile environment is made, especially in light of the alleged conduct of purported harassers sued in the cases cited below, which various courts found did not give rise to a claim of hostile environment sexual harassment. *See, e.g., Zaring Homes, Inc.*, 104 F.3d at 822 (although Plaintiff subjected to offensive and inappropriate verbal comments and unprofessional conduct, Title VII was "not designed to purge the workplace of vulgarity.") (citations and internal quotations omitted); *Baskerville v. Culligan Intern'l Co.*, 50 F.3d 428, 430, (7th Cir.1995) (nine allegedly unlawful incidents of verbal conduct spread over seven months could not reasonably be thought to constitute sexual harassment under Title VII); *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705 (7th Cir.1995) (held supervisor who stroked Plaintiff's leg on one occasion, grabbed her buttocks on a separate occasion, told her that he found her attractive, and twice asked her out on dates, did not commit acts which were actionable); *Weiss v. Coca–Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir.1993) (held actions of supervisor unactionable even though he called subordinate "dumb blonde", placed "I love you" signs in her work area, asked her for a date, put his hands on her shoulder, and tried to kiss her); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir.1993) (held the following acts do not constitute sexual harassment: supervisor made inappropriate remarks, kissed and repeatedly touched the plaintiff, and chased her around a forest preserve); *Stacy v. Shoney's Inc.*, 955 F.Supp. 751, 755–6 (E.D.Ky.1997) (while conduct which included some inappropriate touching was immature, inappropriate and boorish, it did not constitute offensive conduct actionable as harassment (citing cases), *aff'd*, 142 F.3d 436 (6th Cir.1998)); *Ballou v. University of Kan. Med. Ctr.*, 871 F.Supp. 1384 (D.Kan.1994) (held defendant's actions did not constitute sexual harassment where supervisor defendant asked plaintiff about her interest in a romantic relationship, asked her to kiss him on her birthday, often stared at her and followed her); *Freedman v. American Standard*, 41 Fair Empl. Prac. Cas.

---

**4.** See the cases cited and described below, beginning with *Black v. Zaring Homes, Inc.*, 104 F.3d 822 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997).

**5.** Plaintiff never complained about the article she received from Defendant Crawford on July 2, 1991 until at the earliest, the Fall of 1992. In addition, Plaintiff testified in her deposition that the only conduct that she considered harassing were (1) the telephone call in June, 1992; (2) the meeting outside her apartment building two days later, and (3) the telephone call in September, 1992 informing her that she would not be permitted to train with the team that season. When asked what activities occurred between July 2nd, 1991 and May of 1992 involving Crawford that she contended were sexual harassment, Klemencic testified "nothing."

(BNA) 471, 476, No. 83–2126, (D.N.J. July 11, 1986), 1986 WL 7825 (one obscene message, rudeness, and an accepted refusal of a date do not equate to sexual harassment which creates a hostile or offensive environment), *aff'd*, 833 F.2d 304 (3rd Cir.1987).

Therefore, Plaintiff's belatedly identified claims of hostile educational environment under Title IX against OSU and under § 1983 against Crawford are **DISMISSED** because Plaintiff fails to allege conduct sufficient to establish such a claim. Defendant Crawford's Motion for Partial Summary Judgment is therefore **GRANTED.**[6]

### B. Plaintiff's Claim for Quid Pro Quo Sexual Harassment under Title IX Against OSU Fails under the Gebser Standard.

■ This Court previously denied Defendant OSU's first Motion for Summary Judgment on Plaintiff's claim for *quid pro quo* sexual harassment under Title IX because it considered Plaintiff's claim in terms of agency principles. See *Klemencic v. Ohio State University and Crawford*, Memorandum and Order, (S.D. Ohio June 25, 1996). At that time, neither the Sixth Circuit, nor the Supreme Court had established a standard for imposing liability on an educational institution under Title IX. Recently, however, in *Gebser v. Lago Vista Independent School Dist.*, —— U.S. ——, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), the Supreme Court articulated such a standard, and therefore, a new analysis of Plaintiff's claim under this standard is warranted.[7]

In *Gebser*, the Supreme Court held that an educational institution could not be held liable for sexual harassment undertaken by one of its employees under Title IX unless a plaintiff can prove that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the re-

cipient's programs" and that official "refuses to take action to bring the recipient into compliance" or, in other words, exercises "deliberate indifference." *Id.*, —— U.S. ——, ——, 118 S.Ct. 1989, 1999, 141 L.Ed.2d 277. Thus, the Supreme Court held that the institution cannot be held liable in damages for its employees' independent actions, but only for its own official decisions under an "actual notice and deliberate indifference" standard. *Id.*, —— U.S. ——, ——, 118 S.Ct. 1989, 2000, 141 L.Ed.2d 277.

After the *Gebser* opinion was published, this Court allowed the parties to supplement their briefs on summary judgment incorporating *Gebser's* actual notice and deliberate indifference standard. Upon consideration of the briefs, the Court finds that Plaintiff fails to present evidence sufficient to raise a genuine issue of material fact under the *Gebser* deliberate indifference standard, and, therefore, her claim under Title IX against OSU should be dismissed.

It is undisputed that no one at OSU who had authority to institute corrective measures had actual notice of Crawford's alleged harassment until Klemencic informed her head coach and the Athletic Director Jones in September 1992. It is also undisputed that Jones conducted an investigation into her complaint, and that no further harassment in the form of sexual advances or likewise occurred thereafter. In fact, Klemencic admitted that she had no further contact whatsoever with Crawford after notifying Jones of Crawford's conduct. Furthermore, there is no dispute that Jones met with Crawford within a week of being notified by Klemencic and counseled Crawford about his conduct. He also informed Klemencic in October of his counseling of and meeting with Crawford, and placed a written letter of reprimand in Crawford's file in December 1992. That letter stated, in part:

A recent investigation of charges alleging sexual harassment revealed that you had

**6.** The Court consequently finds it unnecessary to address Defendant Crawford's argument for qualified immunity from Plaintiff's claim for hostile educational environmental.

**7.** Defendant OSU also argues that Plaintiff's Title IX claim is barred by the Eleventh Amendment because Congress has not validly abrogated Ohio's sovereign immunity in the context of Title

IX pursuant to its legislative power under Section 5 of the Fourteenth Amendment. However, the Sixth Circuit recently resolved this dispute by holding that Congress validly abrogated the states's Eleventh Amendment immunity in actions brought under Title IX. See *Franks v. Kentucky School for the Deaf*, 142 F.3d 360 (6th Cir.1998).

pursued a personal relationship with a former student-athlete who was a student of the University at the time of this incident. Despite the student's expressed disinterest, you continued on at least one occasion to pursue the relationship. You should understand that actions of this nature create an offensive and harassing environment. This type of behavior is inappropriate and unacceptable. It is my philosophy that personal, sexual relationships between coaches and student-athletes or students of this University are inappropriate and should not be permitted.

This reprimand is formal notification that sexual harassment will not be tolerated. If you continue to violated this policy, further disciplinary action, up to and including removal from service, will be initiated.

Klemencic was unaware that this letter of reprimand was placed in Crawford's file,[8] and thus, was not satisfied with Jones's response to her Complaint. She proceeded to complain about Crawford's conduct to several other OSU officials from various departments, and, in early January 1993, filed a Complaint with the Office of Dispute Resolution in the Office of Human Resources. In response to the Complaint, the University designated Ms. Carr–Williams to investigate the complaint. After interviewing those involved, Carr–Williams issued letters containing final findings and recommendations to both Crawford and Jones. It is undisputed that Carr–Williams' recommendations that Crawford participate in a training session,

and be counseled by a Human Resource Specialist regarding sexual harassment were followed. In addition, it is undisputed that Carr–Williams' recommendations that Crawford's reprimand letter remain in his file for a year, and remain permanently in the Office of Human Resources were followed.

While there may be a dispute over whether Carr–Williams' recommendation that Klemencic be allowed to train with the team was followed since Klemencic denies that Carr–Williams offered her the opportunity and that she declined it, the dispute is not a material one. Whether Carr–Williams made the offer is not material because for OSU to have made such an offer would have been futile. It is undisputed that Klemencic testified that it was "pretty impossible" for her to return to train with the team "because all [her] teammates hated [her]" and that she "could not return in an atmosphere like that." A failure to remedy personality conflicts among co-workers or students or teammates does not amount to discrimination by the employer or institution. *Vore v. Indiana Bell Telephone Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir.1994).

Klemencic argues that there is a dispute of fact as to whether OSU's response was so inadequate as to amount to deliberate indifference because all of her demands were not met.[9] For instance, Jones was not removed from the team, neither a written nor a public verbal apology were issued, and according to Klemencic,[10] she was not offered the opportunity to train with the team.[11] OSU cannot be

---

**8.** One of Klemencic's chief complaints regarding OSU's alleged deliberate indifference appears to be that she "was left in the dark" about the reprimand of Crawford and any other remedial action that was undertaken. However, there is no obligation in sexual harassment jurisprudence to notify the alleged victim of the punitive or remedial measures undertaken as long as they indeed are taken. *See, e.g., Stacy v. Shoney's, Inc.*, 955 F.Supp. 751 (E.D.Ky.1997).

**9.** In the Complaint she filed with the University she demanded the following: "I am insisting that Ed Crawford be removed immediately from his position as assistant coach. I desire an immediate return to practice without mistreatment from my teammates, thus requiring a team meeting to explain what has happened to me, including an apology. I demand a full public admission of sexual harassment and an apology, both verbal and written. I am requesting that the parents of

all members of the team be notified of this situation. And, finally, I request specific guidelines be created for all coaches supervising athletes of the opposite gender or same sexual preference, with any violation resulting in the removal of the coach immediately."

**10.** While Klemencic testified that she "never" had a telephone conference with Carr–Williams, was "never" informed that she could train with the team, and "never" told Carr–Williams that she did not want to train with the team, she later testified about a "conversation I had with Gail Carr–Williams regarding the corrective action that was supposed to be taken after the findings of her investigation."

**11.** Since Klemencic did not refer to the volunteer assistant position in the complaint she filed with the Office of Human Resources, Carr–Williams

held liable under a deliberate indifference standard, however, for not capitulating to the demands of one who allegedly has been sexually harassed when those demands require more than what is necessary to remedy the harassment.

When the educational institution responds with good-faith remedial action, this Court cannot say that the institution has itself committed an act of discrimination. *See, e.g., Blankenship v. Parke Care Centers, Inc.,* 123 F.3d 868, 873–75 (6th Cir.1997) (regarding employer's duty to remedy co-worker hostile environment harassment under Title VII, which was compared to a deliberate indifference standard), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). OSU had no obligation to remove Crawford under any standard of. liability. "Effectiveness is measured not·by the extent to which the employer disciplines or punishes the alleged harasser, but rather if the steps taken by the defendant halt the harassment." *Stacy v. Shoney's Inc.,* 955 F.Supp. 751, 756 (E.D.Ky. 1997) (citing *Bouton v. BMW of North America, Inc.,* 29 F.3d 103, 110 (3rd Cir.1994)). There is not even an allegation of any "sexual" conduct of a harassing nature after the June 1992 incidents, and no contact whatsoever between Klemencic and Crawford after notice was given to the University.

In addition, Klemencic's claim that OSU never offered her the opportunity to train with the team after her complaint was investigated, despite its written and testimonial evidence to the contrary, can not render OSU liable under a deliberate indifference standard for several reasons. First, Klemencic was not eligible, and OSU could not make her eligible under NCAA guidelines. Second, Klemencic has offered no admissible evidence and has apparently withdrawn her claim that she was an Olympic caliber athlete. Even if she had such evidence, or preserved that claim, it would not be "deliberately indifferent" for Jones to have a different view of Klemencic's capabilities or potential. Third, it can not be "deliberately indifferent" for OSU to fail to offer a remedy

to Klemencic that her testimony suggests she would have refused because she "could not return" to that environment.

Fourth, this Court is not convinced, even when construed in a light most favorable to Plaintiff, that Klemencic had a right to be "reinstated" to train with the team after she notified OSU of Crawford's conduct. While Crawford may have held himself out as able to train and coach Klemencic, her own testimony reveals that she understood that such an "agreement" or "understanding" was subject to the approval of the head coach and/or athletic department, who could have declined the request for any legal reason. What Jones stated to Klemencic was true: Crawford's job was to train eligible athletes; he could not make Crawford coach Klemencic on Crawford's own time. While Klemencic may have a claim against Crawford for denying her this educational "benefit" based upon her refusals of his alleged sexual advances, she has no claim that OSU denied her this "benefit" based upon her refusals. Rather, the only evidence in the record demonstrates that OSU denied her this "benefit" because she was not entitled to it under NCAA rules, and it did not believe she was·an Olympic caliber athlete.

In other words, OSU's alleged denial of this educational "benefit" cannot be said to be a conscious discriminatory act amounting to deliberate indifference when Klemencic was not entitled to train with the team in the first place. Under NCAA guidelines, her eligibility had expired. And OSU's stated reason for not reinstating her to the team was because it did not consider Klemencic to be an Olympic caliber athlete. In sum, OSU's response to her Complaint,. although not personally satisfying to Klemencic, was a response proportionate to the allegations. In light of everything that OSU did in response to Klemencic's Complaint, Plaintiff fails to present evidence sufficient to establish that OSU could be liable under a deliberate indifference standard.[12] Therefore, Plaintiff's claim under Title IX against OSU for *quid*

---

investigation and recommendations did not relate to that position.

**12.** For these reasons, Plaintiff likewise fails to present evidence sufficient to raise a genuine

issue of material fact as to whether the University could be held liable for its response to her claim, if any, of a hostile educational environment. *See Kauffman,* 970 F.2d at 184; *Stacy,* 955 F.Supp. at 755–56.

*pro quo* sexual harassment is **DISMISSED**, and OSU's Second Motion for Summary Judgment is **GRANTED**.

### C. Plaintiff Raises a Genuine Issue of Material Fact Regarding Whether Crawford's Alleged Conduct Constituted a Sexual Advance or a Request for Sexual Favors.

█ The only remaining issue is Defendant Crawford's motion for summary judgment (doc. 78) on Klemencic's *quid pro quo* claim.[13] Crawford argues that he cannot be liable for *quid pro quo* sexual harassment because his conduct in asking Klemencic out was not "sexual" in nature, and cannot be considered, as a matter of law, "sexual advances or requests for sexual favors."

To prevail in an action under 42 U.S.C. § 1983 alleging *quid pro quo* sexual harassment against an individual as a violation of the equal protection and due process clauses of the Fourteenth Amendment, a plaintiff must assert and prove:

> (1) She was a member of a protected class; (2) she was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was based on sex; (4) her submission to the unwelcomed advances was an express or implied condition for receiving job (education) benefits, or her refusal to submit to a supervisor's sexual demands resulted in a tangible job (educational) detriment; and (5) the existence of respondeat superior liability.

*Kauffman v. Allied Signal Inc.*, 970 F.2d 178, 186, (6th Cir.1992), citing *Highlander v. KFC National Management Co.*, 805 F.2d 644, 648 (6th Cir.1986); *see also Poe*, 853 F.2d at 430 (Title VII framework applies to equal protection and due process claims brought pursuant to 42 U.S.C. § 1983) *and Doe*, 103 F.3d at 514 (Title VII framework applies under Title IX). The fifth element of respondeat superior liability is not applicable here since this is an action against an individual under § 1983. Since Defendant OSU has been dismissed, there is no employer to whom respondeat liability can be imputed.

In order for Plaintiff to survive summary judgment on this argument, this Court must rule that a reasonable jury could find that the alleged conduct of Crawford was an express or implied request to engage in sexual acts. *See, e.g., Petrone v. Cleveland State University*, 993 F.Supp. 1119 (N.D.Ohio 1998). It is undisputed that Crawford did not explicitly request a sexual favor, nor did he explicitly mention the idea of sex with Klemencic at all. However, Klemencic alleges that, in the context of asking her to go out with him, Crawford mentioned kissing her in a hypothetical question and also stated that "he could go out and get a prostitute, or he could have one night stands, but that would not be the same, because he wanted to be with someone he cared about."

One reading of the discussion between Crawford and Klemencic could be that he was not interested in sex at all; rather, he was interested in a meaningful relationship with someone he cared about, irrespective of whether sex was a part of the relationship. A reasonable jury could also find, however, that the comments by Crawford meant that he wanted to have sex with her and not just simply with prostitutes or strangers during one night stands. Therefore, Plaintiff has presented evidence sufficient to raise a genuine issue of material fact as to whether Crawford's conduct constituted a sexual advance.[14] Defendant Crawford's Motion for Summary Judgment based upon its joinder in OSU's Motion is therefore **DENIED**.

### V. CONCLUSION

For the foregoing reasons, OSU's Second Motion for Summary Judgment is **GRANTED**, and Defendant Crawford's Motion for

---

**13.** While Crawford's Motion for Partial Summary Judgment did not address this claim, he joined the portion of OSU's Motion for Summary Judgment on Plaintiff's *quid pro quo* claim that argued that her claim fails because she has no evidence of a sexual advance or request for sexual favors. Since OSU has been dismissed from this case, the lone remaining issue is Crawford's *quid pro quo* argument.

**14.** The court is mindful that under the ruling and rationale of *Petrone v. Cleveland State University*, 993 F.Supp. 1119 (N.D.Ohio 1998) Defendant Crawford's and OSU's argument might carry the day. However, since *Petrone* is on appeal to the Sixth Circuit, its force and validity is unclear at the present time.

Partial Summary Judgment is **GRANTED** in part, and **DENIED** in part. Trial will commence on Plaintiff's claim under 42 U.S.C. § 1983 against Defendant Crawford in his individual capacity forthwith.

**IT IS SO ORDERED.**